**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------- X
STARR INDEMNITY & LIABILITY COMPANY,

                                   Plaintiff,                    Case No. 1:24-cv-3309

       - v -

SCOTTSDALE INSURANCE COMPANY,

                                 Defendant.
-------------------------------------------------------------------- X

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff STARR INDEMNITY & LIABILITY COMPANY ("STARR"), by and through its attorneys, CLAUSEN MILLER P.C., as and for their Complaint against Defendant SCOTTSDALE INSURANCE COMPANY ("SCOTTSDALE"), to obtain a judgment declaring the rights and legal relations of the parties to this action, in the respects hereinafter set forth and allege as follows:

### NATURE OF THE ACTION AND UNDERLYING ALLEGATIONS

1.      This is an action to obtain a declaratory judgment and further relief relative to the rights and obligations of the parties regarding SCOTTSDALE's insurance coverage for STARR's insured, L&M Builders Group, LLC ("L&M"), in relation to an underlying action pending in the Supreme Court of the State of New York, County of Queens, styled *Hector David Campoverde and Gladys Rivas v. NYC Housing Development Fund, HP Marcus Garvey Preservation Housing Company, Inc., and L&M Builders Group LLC  v. C.C.C. Renovation Inc. v. Vazquez Bro Restoration Inc.* (Index No. 712082/2015), arising out of injuries alleged to have been experienced by underlying plaintiff Campoverde when he fell from a scaffold while working at a construction site located at 396B Bristol Street in Brooklyn, New York, on September 14, 2015, in violation of New York Labor Law §§ 200, 240(1) and 241(6) (the "Underlying Action").

10728736.1

2.     For her part, underlying plaintiff Rivas alleges that subsequent to underlying plaintiff Campoverde's September 14, 2015 injuries, she incurred medical expenses and loss of services, companionship and consortium by virtue of her relationship to Campoverde.

3.     According to the allegations of the Complaints and Third-Party Complaints in the Underlying Action, at the time of his injury, underlying plaintiff Campoverde was an employee of underlying third-party defendant Vazquez Bro Restoration Inc., which was, in turn, a sub-subcontractor of L&M's subcontractor, Scottsdale insured and underlying third-party defendant C.C.C. Renovation Inc. ("C.C.C.").   The underlying Third-Party Complaints allege that if plaintiff Campoverde sustained the injuries and damages complained of, such injuries and damages were caused entirely by the negligence of Vazquez Bro Restoration Inc. and C.C.C.

4.     In this regard, subcontractor C.C.C. entered into a written contract with general contractor L&M which required C.C.C to defend, indemnify and hold L&M harmless from all claims, damages, losses and expenses arising out of or resulting from C.C.C.'s work.   C.C.C. also agreed to procure and maintain liability insurance for the benefit of L&M and the owner of 396B Bristol Street.   And, on February 14, 2024, partial Summary Judgement was granted in the Underlying Action in favor of L&M's contractual indemnification claim against C.C.C. (NYSCEF Doc. No. 323.)

5.     For its part, SCOTTSDALE, through its agents, Scottish American and MEK Financial Services Corp., bound SCOTTSDALE's insurance coverage for C.C.C. and accepted insurance premium for the period July 1, 2015 to July 1, 2016 as a renewal of the insurance coverage Scottsdale issued to C.C.C. for the period July 1, 2014 to July 1, 2015. SCOTTSDALE's agents also issued a Certificate of Liability Insurance to L&M for the period July 1, 2015 to July 1, 2016, purportedly under insurance issued by SCOTTSDALE to C.C.C. as the Named Insured.

6.      However, when presented with L&M's claim for the Underlying Action, SCOTTSDALE denied coverage.  Despite the language of its own renewal provision in the July 1, 2014 to July 1, 2015 SCOTTSDALE policy and the requirements of New York Ins. Law § 3426(e)(1), SCOTTSDALE asserts that there was no policy in effect at the time of underlying plaintiff Campoverde's injury or damage.

7.      Thus, an actual controversy exists warranting a declaration of the rights and legal obligations of SCOTTSDALE in relation to C.C.C. and L&M, and STARR as a coincidental insurer of L&M.

## THE PARTIES

8.      Plaintiff STARR INDEMNITY & LIABILITY COMPANY ("STARR") is incorporated in Texas with its principal place of business in New York, New York.  STARR's policy of insurance was issued to L&M at its principal place of business in Larchmont, New York.

9.      Defendant SCOTTSDALE INSURANCE COMPANY ("SCOTTSDALE") is incorporated in Arizona with its principal place of business in Columbus, Ohio. SCOTTSDALE's policy of insurance was issued to non-party C.C.C. at its principal place of business in Long Island City, New York.

## JURISDICTION AND VENUE

10.     28 U.S.C. § 2201 provides that in a case of actual controversy within its jurisdiction, this Court may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.

11.     L&M sought insurance coverage from SCOTTSDALE for the Underlying Action; SCOTTSDALE has denied L&M coverage for the Underlying Action.

12.    To the extent that SCOTTSDALE does not honor its policy and provide insurance coverage to L&M, STARR's excess policy of insurance may be called upon to provide coverage for the Underlying Action.

13.    An actual controversy exists in this matter by virtue of SCOTTSDALE's denial of coverage, and this Court has jurisdiction to declare the rights and other legal relations of the parties.

14.    This Court also has original jurisdiction pursuant to 28 U.S.C. § 1332 because this is a civil action in which the amount in controversy exceeds the sum or value of $75,000.00, exclusive of costs and interests, and is between citizens of different states.

15.    The underlying plaintiffs' demands, and by extension, the value of L&M's SCOTTSDALE coverage in relation to the Underlying Action exceed $75,000.00.

16.    STARR and SCOTTSDALE are citizens of different states.

17.    28 U.S.C. § 1391(2) provides that a civil action may be brought in a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated.

18.    Venue is proper in this Court pursuant to 28 U.S.C. § 112(c) because it is the District and Division embracing the place where the Underlying Action is pending (Queens County); the place where the acts or omissions at issue in the Underlying Action are alleged to have taken place (Kings County); the place where the contract requiring SCOTTSDALE's insured C.C.C. to insure L&M was made (Queens County); and the place where SCOTTSDALE's agents bound and delivered the insurance policies for C.C.C. (Queens County).

19.    STARR has no other adequate remedy available at law against SCOTTSDALE.

## FACTUAL BACKGROUND

20.     L&M Builders Group, LLC ("Contractor") and C.C.C. Renovation Inc. ("Subcontractor") entered into an Agreement dated July 1, 2015 (the "Subcontract").

21.     The Subcontract provides, in pertinent part, as follows:

*4.6*     INDEMNIFICATION

*4.6.1*   To the fullest extent permitted by law, the Subcontractor shall indemnify and hold harmless the Owner, Contractor … and agents and employees of any of them from and against claims, damages, losses and expenses, including but not limited to attorney's fees, arising out of or resulting from performance of the Subcontractor's Work under this Subcontract; provided that such claim, damage, loss or expense is attributable to bodily injury, sickness, disease or death … but only to the extent caused in whole or in part by negligent acts or omissions of the Subcontractor, the Subcontractor's Sub-subcontractors, anyone directly or indirectly employed by them or anyone for whose acts they may be liable, regardless of whether or not such claim, damage, loss or expense is caused in part by a party indemnified hereunder.

Such obligation shall not be construed to negate, abridge, or otherwise reduce other rights or obligations of indemnity which would otherwise exist as to a party or person described in this Paragraph 4.6.

*4.6.2*   In claims against any person or entity indemnified under this Paragraph 4.6 by an employee of the Subcontractor, the Subcontractor's Sub-subcontractor, anyone directly or indirectly employed by them or anyone for whose acts they may be liable, the indemnification obligation under this Paragraph 4.6 shall not be limited by a limitation on amount or type of damages, compensation or benefits payable by or for the Subcontractor or the Subcontractor's Sub-subcontractors under workers or workmen's compensation acts, disability benefit acts or other employment benefit acts.

***

RIDER TO SUBCONTRACTOR AGREEMENT

Article 13 Para 13.1 is deleted in its entirety and the following is substituted in lieu thereof:

Subcontractor agrees to maintain insurance continuously during all periods of the Work and for one (1) year after Final Completion of the Project and to provide evidence thereof by delivery to Contractor of a certificate of insurance and such insurance company policy endorsements as Contractor may require and, if requested by Contractor, a copy of the insurance policy.  Such documents shall in each case show amounts of insurance no less than required herein, shall be provided prior to commencing Work, upon final payment and at other times at Contractor's request, and shall provide a warranty that the policy contains no specific exclusions for the Subcontractor's Work hereunder.  In the event other

Subcontract Documents call for higher coverage requirements, the higher requirements shall be met.

\*\*\*

b.     General Liability Insurance extended to include:

- Contractual Liability coverage;
- Occurrence Based;
- Products and Completed Operations;
- Personal Injury Coverage;
- Coverage for hazards pertaining to explosions, collapse and underground property damage;
- Broad form property damage; and
- Limits in amounts as required in the Prime Contract, but in any event, not less than $2,000,000 per project aggregate limit and $1,000,000 per occurrence Bodily Injury and Property Damage.

\*\*\*

d.     All certificates of insurance and insurance policies are to be endorsed to show Contractor, the entities listed on Exhibit B, and their respective successors and/or assigns, as additional insureds, in addition to any other parties now or in the future required by the Subcontractor Documents (collectively, the "Additional Insureds"). …

Certificate Holder:    L&M Builders Group, LLC …

All insurance certificates shall include the following language:

> "The coverage provided for the additional insured(s) listed on this certificate shall be primary and non-contributory to any insurance carried by such additional insured(s), whether collectible or not. A waiver of subrogation shall also be granted for such additional insured(s)."

\*\*\*

f.     Excess liability insurance of at least $4,000,000.00 per occurrence and in the aggregate.

\*\*\*

Para 13.2 is deleted in its entirety and the following is substituted in lieu thereof:

Coverages on an occurrence basis shall be maintained without interruption from the date of commencement of the Subcontractor's Work until the later of: the date of final payment, the date coverage is required to be maintained after final payment, or one year after Final Completion of the Project.

Add Para 13.8: Any insurance policy obtained by the Subcontractor to fulfill the insurance requirements of the Subcontract shall name the Additional Insureds as additional named insureds and shall provide that such insurance shall be deemed primary insurance to any similar insurance the Additional Insureds may obtain for their own benefit, which shall be excess or secondary but not contributing insurance. Each such policy obtained by the Subcontractor shall provide that the insurer shall defend any suit

against the Additional Insureds, their officers, agents or employees arising out of the Work, even if such suit is frivolous or fraudulent.

***

Exhibit B
Insurance Requirements

Seller or Subcontractor (as the case may be, hereinafter the "Subcontractor") must maintain insurance, meeting at a minimum, the following requirements for the project, from the date of commencement of work, continuously during all periods of work, and (1) year after the final completion of work, completed operations coverage.  Evidence of insurance via a Certificate of Insurance, copies of the General and Excess / Umbrella Liability insurance policies (including applicable endorsements) must be delivered to Contractor for review and approval.  Such insurance policies must carry the amounts of insurance no less than the minimum requirements shown below, and must contain no exclusions inconsistent with the work or the project.

**General Liability Insurance** … The policy must be written on an "Occurrence" form showing the following minimum limits:

| | |
|---|---|
| Each Occurrence Limit | $1,000,000 |
| General Aggregate Limit ("Per Project" basis) | $2,000,000 |

***

**Excess/Umbrella Liability** Insurance over the General …. With the following minimum limits with no less than on a "Follow Form" basis. …

| | |
|---|---|
| Each Occurrence Limit | $4,000,000 |

***

**<u>Certificates of Insurance</u>**

Subcontractor is responsible for providing a certificate of insurance evidencing compliance with the above requirements.  The certificate written on customary form (Acord 25) must include the following language:

**"The coverage provided for the Additional Insured(s) shall be Primary and Non-Contributory to the General Liability and Excess / Umbrella Liability carried by such Additional Insured(s).  A Waiver of Subrogation shall also be granted in favor of the Additional Insured(s)."**

***

(Emphasis in original.)

22.     A true and accurate copy of the L&M-C.C.C. Subcontract is attached hereto as Exhibit "A".

23.     On February 14, 2024, partial Summary Judgement was granted in the Underlying Action in favor of L&M's contractual indemnification claim against C.C.C. (NYSCEF Doc. No. 323.)

## C.C.C.'S PROCUREMENT OF SCOTTSDALE INSURANCE FOR L&M

24.     SCOTTSDALE is authorized to engage in, and does engage in, insurance business in the State of New York.

25.     Relevant here, SCOTTSDALE entered into a June 22, 2011 general agency agreement with non-party Scottish American which expressly authorized Scottish American to (a) issue certificates evidencing the placement of insurance; and (b) bind and renew insurance contracts.  Scottish American, in turn, bound and renewed insurance with non-party MEK Financial Services Corp. (collectively, Scottsdale's "Agents").

26.     A true and accurate copy of the Scottish American general agency agreement is attached hereto as Exhibit "B".

27.     Thereafter, on July 1, 2014, SCOTTSDALE, through its agents, issued a Commercial Excess Liability Policy of insurance, No. NXS0001225, to named insured C.C.C. Renovation Inc., at its Long Island City, New York address for the policy period July 1, 2014 to July 1, 2015, with limits of liability of $4,000,000 each occurrence / $4,000,000 in the aggregate (the "Scottsdale 2014-2015 Policy").

28.     The Scottsdale 2014-2015 Policy provides, in pertinent part, as follows:

### COMMERCIAL EXCESS LIABILITY COVERAGE FORM
[CX 00 01 04 13]
***

The word "insured" means any person or organization qualifying as such under the "controlling underlying insurance".
***

SECTION I – COVERAGES

1.     Insuring Agreement

    a.     We will pay on behalf of the insured the "ultimate net loss" in excess of the "retained limit" because of "injury or damage" to which insurance provided under this Coverage Part applies.

    We will have the right and duty to defend the insured against any suit seeking damages for such "injury or damage" when the applicable limits of "controlling underlying insurance" have been

exhausted in accordance with the provisions of such "controlling underlying insurance".
*** 

SECTION III – CONDITIONS
*** 

5.    Cancellation
*** 

b.    We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

(1)    10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

(2)    30 days before the effective date of cancellation if we cancel for any other reason.

c.    We will mail or deliver our notice to the first Named Insured's last mailing address known to us.
*** 

13.    When We Do Not Renew

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.
*** 

**NEW YORK CHANGES**
CX 01 14 01 14
*** 

D.    The following provision is added:

It is hereby understood and agreed that, notwithstanding anything in this policy to the contrary, with respect to such insurance as is afforded by this policy, the terms of this policy, as respects coverage for operations in the State of New York, must conform to the coverage requirements of the applicable insurance laws of the State of New York or the applicable regulations of the New York Department of Financial Services; provided, however, that the company's limits of insurance, as stated in this policy, are excess of the limits of any underlying insurance or self-insurance, as stated in the Declarations, or in any attached endorsement.
*** 

29.    A true and accurate copy of the Scottsdale 2014-2015 Policy is attached hereto as Exhibit "C".

10728736.1

30.     Importantly, New York Insurance Law § 3426(e)(1) provides, in pertinent part, as follows:

> A covered policy shall remain in full force and effect pursuant to the same terms, conditions and rates unless written notice is mailed or delivered by the insurer to the first-named insured, at the address shown on the policy, and to such insured's authorized agent or broker, indicating the insurer's intention:
>
> (A)  not to renew such policy; or
>
> (B)  to condition its renewal upon change of limits, change in type of coverage, reduction of coverage, increased deductible or addition of exclusion, or upon increased premiums in excess of ten percent (exclusive of any premium increase generated as a result of increased exposure units, pursuant to subsection (d) of this section, or as a result of experience rating, loss rating, retrospective rating or audit), except that with respect to an excess liability policy, the insurer may also, consistent with regulations promulgated by the superintendent, condition its renewal upon requirements relating to the underlying coverage, in which event the conditional renewal notice shall be treated as an effective notice of nonrenewal if such requirements are not satisfied as of the later of the expiration date of the policy or sixty days after mailing or delivery of such notice; or
>
> (C)  that the policy will not be renewed or will not be renewed upon the same terms, conditions or rates; such alternative renewal notice must be mailed or delivered on a timely basis and advise the insured that a second notice shall be mailed or delivered at a later date indicating the insurer's intention as specified in subparagraph (A) or (B) of this paragraph and that coverage shall continue on the same terms, conditions and rates as the expiring policy, until the later of the expiration date or sixty days after the second notice is mailed or delivered; such alternative renewal notice also shall advise the insured of the availability of loss information pursuant to subsection (g) of this section and, upon written request, the insurer shall furnish such loss information within ten days consistent with the provisions of such subsection.

***

31.     However, neither SCOTTSDALE nor its agents timely provided written notice to either C.C.C. that the Scottsdale 2014-2015 Policy would be canceled, non-renewed or that coverage would otherwise be interrupted between July 1, 2015 and October 13, 2015.

32.     Rather, on or about July 1, 2015, C.C.C. timely caused a premium check to be delivered for renewal/continuation of SCOTTSDALE's insurance coverage beyond the stated expiration date of the Scottsdale 2014-2015 Policy.

33.     A true and accurate copy of the premium check, with routing numbers redacted, is attached hereto as Exhibit "D".

34.     Scottish American, as an agent of SCOTTSDALE acting within its written authority, expressly bound coverage for C.C.C. for the period July 1, 2015 to July 1, 2016.

35.     A true and accurate copy of the July 1, 2015 to July 1, 2016 insurance binder is attached hereto as Exhibit "E".

36.     SCOTTSDALE's agents also caused a certificate evidencing the placement of renewal/continuation insurance to be issued to L&M under the SCOTTSDALE policy with stated dates of July 1, 2015 to July 1, 2016.

37.     A true and accurate copy of the July 1, 2015 to July 1, 2016 certificate evidencing SCOTTSDALE's insurance for the benefit of L&M is attached hereto as Exhibit "F".

38.     Thereafter, on October 13, 2015, SCOTTSDALE, belatedly issued a Commercial Excess Liability Policy of insurance, No. NXS0002238, described in its Declarations as a "Renewal of Number NXS0001225" to named insured C.C.C. Renovation Inc., at its Long Island City, New York address, with limits of liability of $4,000,000 each occurrence / $4,000,000 in the aggregate, but for a purported policy period of October 13, 2015 to June 30, 2016 (the "Scottsdale 2015-2016 Policy").

39.     The Scottsdale 2015-2016 Policy provides, in pertinent part, as follows:

**COMMERCIAL EXCESS LIABILITY COVERAGE FORM**
[CX 00 01 04 13]
***

The word "insured" means any person or organization qualifying as such under the "controlling underlying insurance".
***

SECTION I – COVERAGES

1.      Insuring Agreement

      a.      We will pay on behalf of the insured the "ultimate net loss" in excess of the "retained limit" because of "injury or damage" to which insurance provided under this Coverage Part applies.

10728736.1

> We will have the right and duty to defend the insured against any suit seeking damages for such "injury or damage" when the applicable limits of "controlling underlying insurance" have been exhausted in accordance with the provisions of such "controlling underlying insurance".

***

40.     A true and accurate copy of the Scottsdale 2015-2016 Policy is attached hereto as Exhibit "G".

41.     Here, L&M is an "insured" under the "controlling underlying insurance" to the Scottsdale policies by virtue of its written Subcontract with C.C.C.

42.     The underlying plaintiffs' alleged damages are in excess of the $1,000,000 each occurrence / $2,000,000 aggregate limits of liability of the "controlling underlying insurance".

43.     And underlying plaintiff Rivas' claims extend in time well beyond underlying plaintiff Campoverde's September 14, 2015 injuries.

44.     Hence, SCOTTSDALE's insurance, issued to named insured C.C.C., is obligated to provide coverage for additional insured L&M for the period July 1, 2015 to July 1, 2016 and includes coverage for the Underlying Action.

<strong><u>STARR'S EXCESS INSURANCE FOR L&M</u></strong>

45.     STARR is authorized to engage in, and does engage in, insurance business in the State of New York.

46.     Relevant here, STARR issued a Commercial Excess Liability policy of insurance, No. 1000021699, to named insured L&M Development Partners Inc. at its Larchmont, New York address for the policy period April 1, 2015 to April 1, 2016, with limits of liability of $3,000,000.00 each occurrence / $3,000,000.00 in the aggregate (the "Starr Policy"), excess of Houston Casualty Company Commercial General Liability policy of insurance No. H15PC30274-01 with limits of $2,000,000.00 each occurrence / $4,000,000.00 in the aggregate.

47.     The Starr Policy provides that "If other insurance applies to 'Ultimate Net Loss' that is also covered by this Policy, this Policy will apply excess of, and will not contribute to, the other insurance."

48.     A true and accurate copy of the Starr Policy, with premium amounts redacted, is attached hereto as Exhibit "H".

49.     To the extent that SCOTTSDALE does not honor its policy and provide insurance coverage to L&M, STARR's excess policy of insurance may be called upon to provide coverage for the Underlying Action.

**COUNT I**
**DECLARATORY JUDGMENT**
**SCOTTSDALE COVERS THE PERIOD JULY 1, 2015 TO OCTOBER 13, 2015**
**(SCOTTSDALE 2014-2015 POLICY)**

50.     STARR hereby incorporates the allegations, averments and assertions in all preceding paragraphs as if the same were set forth at full length herein.

51.     SCOTTSDALE failed to follow its own policy language in the Scottsdale 2014-2015 Policy where cancellation and nonrenewal is concerned.

52.     SCOTTSDALE failed to comply with New York Ins. Law § 3426(e)(1) where nonrenewal is concerned.

53.     As a result, the coverage of the Scottsdale 2014-2015 Policy remained in effect from July 1, 2015 to October 13, 2015.

54.     The allegations of the Underlying Action fall within the Scottsdale 2014-2015 Policy insuring agreement and are not otherwise excluded.

55.     C.C.C. is an insured under the Scottsdale 2014-2015 Policy for the period July 1, 2014 to October 13, 2015.

56.     L&M is an additional insured under the Scottsdale 2014-2015 Policy for the period July 1, 2014 to October 13, 2015.

57.     L&M is coincidentally an insured under the Starr Policy; to the extent that SCOTTSDALE does not honor its policy and provide insurance coverage to L&M, the Starr Policy may be called upon to provide coverage for the Underlying Action.

58.     By reason of the foregoing, STARR is entitled to a declaration that SCOTTSDALE covers the allegations of the Underlying Action under the Scottsdale 2014-2015 Policy.

**COUNT II**
**DECLARATORY JUDGMENT**
**SCOTTSDALE COVERS THE PERIOD JULY 1, 2015 TO OCTOBER 13, 2015**
**(SCOTTSDALE 2015-2016 POLICY)**

59.     In the alternative, STARR hereby incorporates the allegations, averments and assertions in all preceding paragraphs as if the same were set forth at full length herein.

60.     Notwithstanding its belated issuance of the same, SCOTTSDALE, through its agents, accepted premium for, bound coverage for, and issued evidence of insurance for a "Renewal" policy for the period July 1, 2015 to July 1, 2016.

61.     As a result, in the event that the Scottsdale 2014-2015 does not cover the period July 1, 2015 to October 13, 2015, the coverage of the Scottsdale 2015-2016 "Renewal" Policy must be reformed to reflect the mutual understanding of C.C.C. and SCOTTSDALE that its renewal of the coverage provided to C.C.C. was in effect from July 1, 2015 to July 1, 2016.

62.     The allegations of the Underlying Action fall within the Scottsdale 2015-2016 Policy insuring agreement and are not otherwise excluded.

63.     C.C.C. is an insured under the Scottsdale 2015-2016 Policy for the period July 1, 2015 to July 1, 2016.

64.     L&M is an additional insured under the Scottsdale 2016-2016 Policy for the period July 1, 2015 to July 1, 2016.

65.     L&M is coincidentally an insured under the Starr Policy; to the extent that SCOTTSDALE does not honor its policy and provide insurance coverage to L&M, the Starr Policy may be called upon to provide coverage for the Underlying Action.

66.     By reason of the foregoing, STARR is entitled to a declaration that SCOTTSDALE covers the allegations of the Underlying Action under the Scottsdale 2015-2016 Policy.

**COUNT III**
**DECLARATORY JUDGMENT**
**<u>EQUITABLE CONTRIBUTION</u>**

67.     STARR hereby incorporates the allegations, averments and assertions in all preceding paragraphs as if the same were set forth at full length herein.

68.     The allegations of the Underlying Action fall within SCOTTSDALE'S insuring agreement(s) and are not otherwise excluded.

69.     However, when presented with L&M's claim for the Underlying Action, SCOTTSDALE denied coverage.

70.     L&M is coincidentally an insured under the Starr Policy; to the extent that SCOTTSDALE does not honor its policy and provide insurance coverage to L&M, the Starr Policy may be called upon to provide coverage for the Underlying Action.

71.     Further, STARR's excess coverage does not insure C.C.C.

72.     On February 14, 2024, partial Summary Judgement was granted in the Underlying Action in favor of L&M's contractual indemnification claim against C.C.C. (NYSCEF Doc. No. 323.)

73.     By virtue of its coverage for C.C.C. as Scottsdale's named insured, Scottsdale must indemnify L&M for damages in the Underlying Action.

74.     By virtue of its coverage for L&M as Scottsdale's additional insured, Scottsdale must indemnify L&M for damages in the Underlying Action.

75.    STARR's excess coverage for L&M is excess and above, and does not contribute with, SCOTTSDALE's coverage for L&M.

76.    By reason of the foregoing, STARR is entitled to a declaration that SCOTTSDALE must provide its full coverage for the allegations against L&M in the Underlying Action without contribution from Starr.

**COUNT IV**
**DECLARATORY JUDGMENT**
**<u>UNJUST ENRICHMENT</u>**

77.    STARR hereby incorporates the allegations, averments and assertions in all preceding paragraphs as if the same were set forth at full length herein.

78.    SCOTTSDALE, through its agents, accepted premium for, bound coverage for, and issued evidence of insurance for a "Renewal" policy for C.C.C. for the period July 1, 2015 to July 1, 2016.

79.    The allegations of the Underlying Action fall within SCOTTSDALE'S insuring agreement(s) and are not otherwise excluded.

80.    However, when presented with L&M's claim for the Underlying Action, SCOTTSDALE denied coverage.

81.    L&M is coincidentally an insured under the Starr Policy; to the extent that SCOTTSDALE does not honor its policy and provide insurance coverage to L&M, the Starr Policy may be called upon to provide coverage for the Underlying Action.

82.    By refusing to honor the claims of C.C.C. and L&M and/or its retention of insurance monies in relation to coverage for the period July 1, 2015 to October 13, 2015 SCOTTSDALE has been unjustly enriched at STARR's expense; equity and good conscience do not permit SCOTTSDALE to maintain its denial of coverage for C.C.C. and L&M.

**WHEREFORE**, Plaintiff STARR respectfully requests that this Honorable Court find and declare the following:

10728736.1

(i)     the Scottsdale 2014-2015 Policy is extended to cover the period July 1, 2015 to October 13, 2015;

(ii)    in the alternative, the Scottsdale 2015-2016 Policy is reformed to cover the period July 1, 2015 to July 1, 2016;

(iii)   SCOTTSDALE covers the allegations of the Underlying Action against C.C.C. under its insuring agreement(s) and must indemnify C.C.C.;

(iv)    SCOTTSDALE covers the allegations of the Underlying Action against L&M under its insuring agreement(s) and must indemnify L&M without contribution from STARR;

and further, award:

(a)     any and all sums that L&M and/or STARR become legally obligated to pay as damages because of bodily injury alleged in the Underlying Action;

(b)     any and all amounts STARR may incur on behalf of L&M in the Underlying Action, including for settlements, judgments, attorneys' fees, costs and expenses, and disbursements, as well as interest thereupon;

(c)     any and all costs incurred by STARR to prosecute the present action, including attorneys' fees, costs and expenses, and disbursements, as well as interest thereupon;

(d)     Additional interest against SCOTTSDALE in an amount equal to 9% per annum pursuant to New York's Civil Practice Law and Rules § 5004; and

(e)     such other, different, and further relief, decree or judgment as this Honorable Court may deem just and proper.

10728736.1

Dated: New York, New York
       May 3, 2024

                                        **CLAUSEN MILLER P.C.**

                              By:     /s/ Jacob R. Zissu
                                      Jacob R. Zissu (jzissu@clausen.com)
                                      Tyler J. Lory (tlory@clausen.com)
                                      *Attorneys for Plaintiff*
                                      *Starr Indemnity & Liability Company*
                                      28 Liberty Street, 39th Floor
                                      New York, New York 10005
                                      Phone (212) 805-3900
                                      Fax (212) 805-3939

To:    Scottsdale Insurance Company
       One Nationwide Plaza
       Columbus, Ohio 43215

       Scottsdale Insurance Company
       8877 North Gainey Center Drive
       Scottsdale, Arizona 85258

10728736.1