UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------x
STARR INDEMNITY & LIABILITY
COMPANY,

       Plaintiff,     **MEMORANDUM & ORDER**
               24-CV-3309 (PKC) (TAM)
  - against -

SCOTTSDALE INSURANCE COMPANY,

       Defendant.
--------------------------------------------------------x

PAMELA K. CHEN, United States District Judge:

  Starr Indemnity & Liability Company ("Starr" or "Plaintiff") brings this action against Scottsdale Insurance Company ("Scottsdale" or "Defendant") seeking a declaratory judgment regarding Scottsdale's legal obligations pursuant to certain insurance policies. (Compl., Dkt. 1, ¶ 1.) The insurance coverage dispute arises from an underlying action in the Supreme Court of the State of New York, Queens County, *Hector David Campoverde et al. v. NYC Housing Development Fund et al.*, Index No. 712082/2015, (the "Underlying Labor Litigation"), for injuries allegedly sustained by Hector David Campoverde ("Campoverde") when he fell from a scaffold while working at a construction site in Brooklyn, New York in 2015. (*Id.*)

  Scottsdale now moves to dismiss the present action on the ground that this Court should abstain from exercising jurisdiction over this case in light of two consolidated actions filed in the Supreme Court of the State of New York, Queens County in 2022 pertaining to Scottsdale's insurance coverage obligations with respect to the Underlying Labor Litigation: *C.C.C. Renovation Inc. v. Scottish American Insurance General Agency, Inc. et al.*, Index No. 703374/2022 and *Houston Casualty Company v. Scottsdale Insurance Company et al.*, Index No. 703760/2022 (together, the "State Court Action"). (*See* Def.'s Mem. Supp. Mot. Dismiss ("Def.'s

Br."), Dkt. 16-1, at 1–6.) In the alternative, Scottsdale requests that this Court stay this action until final resolution of the State Court Action. (*Id.* at 1.) For the reasons explained below, the Court stays this matter pending the resolution of the State Court Action.

## BACKGROUND[1]

### I. The Underlying Labor Litigation

As alleged in the Underlying Labor Litigation, on September 14, 2015, Campoverde was working at a construction site at 396B Bristol Street in Brooklyn, New York ("396B Bristol" or the "property") when he fell from a scaffold and sustained injuries, (the "accident"). (Compl., Dkt. 1, ¶ 1.) At the time of the accident, Campoverde was an employee of Vazquez Bro Restoration Inc. ("Vazquez Bro"), a subcontractor for C.C.C. Renovation Inc. ("C.C.C."), which itself was a subcontractor of the general contractor L&M Builders Group LLC ("L&M"). (*Id* ¶ 3.) On November 19, 2015, Campoverde and Gladys Rivas—who claimed that she incurred medical expenses and other losses due to her relationship to Campoverde—sued the owners[2] of 396B Bristol and L&M in the Supreme Court of the State of New York, Queens County, alleging, *inter alia*, violations of N.Y. Labor Law ("NYLL") §§ 200, 240(1), and 241(6). (Compl., Dkt. 1, ¶ 2;

---

[1] The Court assumes the parties' familiarity with the underlying allegations and history of this case and, therefore, only recites the facts and procedural history most relevant to Defendant's motion to dismiss on abstention grounds. The following facts are derived from Plaintiff's Complaint, the exhibits attached thereto, and the relevant state court filings. *See Dean v. Town of Hempstead*, 527 F. Supp. 3d 347, 417–18 (E.D.N.Y. 2021) (noting that "[a] court can take judicial notice of state court decisions on a motion to dismiss" and collecting cases); *Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 425 (2d Cir. 2008) ("[C]ourts routinely take judicial notice of documents filed in other courts . . . to establish the fact of such litigation and related filings." (citation omitted)).

[2] The owners of 396B Bristol are NYC Housing Development Fund, HP Marcus Garvey Preservation Housing Company, Inc., and Marcus Garvey Preservation LLC, (together, the "property owners"). *See* Compl., *Campoverde v. NYC Hous. Dev. Fund*, No. 712082/2015 (N.Y. Sup. Ct. Dec. 15, 2015), Dkt. 2, ¶¶ 14, 28, 42.

2

*see Campoverde*, No. 712082/2015, Dkts. 1–2.  The defendants in the Underlying Labor Litigation filed a third-party complaint against C.C.C.—which in turn sued Vazquez Bro as a second third-party defendant—asserting that Campoverde's alleged injuries were caused entirely by the negligence of the subcontractors.  (Compl., Dkt. 1, ¶ 3); *Campoverde*, No. 712082/2015, Dkts. 27, 127.

The subcontracting agreement between general contractor L&M and its subcontractor C.C.C. contained an indemnification clause under which C.C.C. agreed to defend, indemnify, and hold harmless L&M from claims, damages, losses, and expenses arising from C.C.C.'s work at 396B Bristol.  (Compl., Dkt. 1, ¶¶ 4, 20–21.)  C.C.C. also agreed to procure and maintain liability insurance for L&M and the property owners.  (*Id.*)  On February 14, 2024, partial summary judgment was granted in the Underlying Labor Litigation in favor of L&M's contractual indemnification claim against C.C.C.  (*Id.* ¶ 4); Summ. J. Order, *Campoverde*, No. 712082/2015, Dkt. 323, at 1–2.

At the time the Complaint in this action was filed, the Underlying Labor Litigation was still pending in state court.  (Compl., Dkt. 1, ¶ 1.)  While the parties were briefing the pending motion before this Court, the parties to the Underlying Labor Litigation settled the case.  (*See* Stipulation of Discontinuance, Dkt. 16-16.)  Plaintiff Starr, one of L&M's insurers, (*see* Compl., Dkt. 1, ¶¶ 1, 46), paid $3 million to indemnify L&M in the Underlying Labor Litigation settlement. (*See* Zissu Decl., Dkt. 17-1, ¶ 12; Settlement Agreement, Dkt. 17-2.)

## II.     The Insurance Coverage Policies

L&M's primary insurer at the time of the accident was Houston Casualty Company ("HCC") which covered L&M for liability with limits of $2 million for each occurrence and $4 million in the aggregate.  (Compl., Dkt. 1, ¶ 46.)  For the policy period running from April 1, 2015,

3

to April 1, 2016, L&M had an excess insurance policy agreement with Starr (the "Starr Policy"), which covered liability up to $3 million for each occurrence and $3 million in the aggregate. (*Id.*) The Starr Policy provided that "[i]f other insurance applies to 'Ultimate Net Loss' that is also covered by this Policy, this Policy will apply [the] excess of, and will not contribute to, the other insurance." (*Id.* ¶ 47.)

On July 1, 2014, Defendant Scottsdale, through its agents, non-parties Scottish American Insurance General Agency, Inc. ("Scottish American") and MEK Financial Services Corp. ("MEK"), issued a Commercial Excess Liability Policy of insurance to C.C.C. for the policy period July 1, 2014, to July 1, 2015, with limits of liability of $4 million for each occurrence and $4 million in the aggregate (the "Scottsdale 2014-2015 Policy"). (*Id.* ¶¶ 25, 27.) Upon expiration of the Scottsdale 2014-2015 Policy, neither Scottsdale nor its agents provided C.C.C. with written notice that coverage would be cancelled or not renewed. (*Id.* ¶ 31.) On July 1, 2015, C.C.C. issued a premium check to be delivered to Scottsdale for renewal/continuation of the insurance coverage beyond the expiration of the Scottsdale 2014-2015 Policy. (*Id.* ¶ 32.)

On October 13, 2015, Scottsdale issued another Commercial Excess Liability Policy of insurance to C.C.C. with limits of $4 million for each occurrence and $4 million in the aggregate for the policy period of October 13, 2015, to June 30, 2016 (the "Scottsdale 2015-2016 Policy"). (*Id.* ¶ 38.) In a separate insurance binder issued by Scottsdale's agents dated October 15, 2015, C.C.C. was notified that an insurance policy with Scottsdale was effected for the policy period July 1, 2015, to July 1, 2016. (*Id.* ¶ 34; Scottsdale/Scottish American Binder, Dkt. 1-5, at 1.) Scottsdale's agents also issued a Certificate of Liability insurance to L&M for the period of July 1, 2015, to July 1, 2016. (Compl., Dkt. 1, ¶ 36; *see* L&M Certificate of Insurance, Dkt. 1-6.) When Scottsdale was presented with L&M's claim related to the Underlying Labor Litigation, Scottsdale

4

denied coverage asserting that there was no Scottsdale insurance coverage policy in effect at the time of the accident on September 14, 2015. (Compl., Dkt. 1, ¶ 6.)

### III.    The State Court Action

On February 15, 2022, C.C.C. commenced an action in New York state court against Scottsdale and Scottish American for breach of contract, bad faith and consequential damages, negligent misrepresentation, and declaratory judgment related to Scottsdale's legal obligations to defend and indemnify L&M in connection with the Underlying Labor Litigation. (C.C.C. State Ct. Summons, Dkt. 16-7, at 2; C.C.C. State Ct. Am. Compl., Dkt. 16-8, ¶¶ 26–73.) On February 18, 2022, HCC initiated a separate action against Scottsdale, Scottish American, and MEK seeking declaratory judgment regarding Scottsdale's insurance coverage at the time of the accident. (*See* HCC State Ct. Compl., Dkt. 16-11.) HCC's complaint includes allegations that the Scottsdale 2014-2015 Policy was renewed through Scottsdale's agents for the policy period July 1, 2015, to July 1, 2016, and that Scottsdale failed to provide written notice of cancellation or non-renewal, which would be required if the policy was not meant to be renewed. (*Id.* ¶¶ 118–29.)

On October 24, 2023, the state court denied Scottsdale's pre-discovery motion for summary judgment finding that there were potentially triable issues of fact as to whether Scottsdale owes coverage. (State Ct. Summ. J. Order, Dkt. 16-13, at 4, 7.) That same day, C.C.C.'s and HCC's actions were consolidated for discovery and trial. (State Ct. Consolidation Order, Dkt. 16-12.) Scottsdale filed an interlocutory appeal of the summary judgment decision with the New York State Appellate Division, Second Department, arguing that Scottsdale is not obligated to provide indemnification for the Underlying Labor Litigation under New York law. (*See* Def.'s State App. Br., Dkt. 16-3, at 1–2.) Scottsdale's interlocutory appeal has not yet been decided. *See Houston Cas. Co. v. Scottsdale Ins. Co.*, No. 2023-10306 (N.Y. App. Div.). On December 17,

5

2024, C.C.C. discontinued its claims in the State Court Action, but HCC remains a party to the litigation. (*See* C.C.C. State Stipulation of Discontinuance, Dkt. 16-17.)

### IV. The Federal Action

On May 3, 2024, Starr filed this declaratory judgment action against Scottsdale asserting diversity of citizenship jurisdiction under 28 U.S.C. § 1332, and that "this Court has jurisdiction to declare the rights and other legal relations of the parties" under the Declaratory Judgment Act ("DJA"), 28 U.S.C. § 2201. (Compl., Dkt. 1, ¶¶ 10, 13–14.) In Count I of the Complaint, Starr seeks a declaratory judgment that the Scottsdale 2014-2015 Policy covered C.C.C. as the named insured and L&M as an additional insured for the period of July 1, 2014, to October 13, 2015. (*Id.* ¶¶ 50–58.) In the alternative, in Count II of the Complaint, Starr seeks a declaratory judgment that the Scottsdale 2015-2016 Policy covered C.C.C. as the named insured and L&M as an additional insured for the period of July 1, 2015, to July 1, 2016. (*Id.* ¶¶ 59–66.) In Counts III and IV of the Complaint, Starr asserts that it is entitled to a declaration that Scottsdale must provide its full coverage for the allegations against L&M in the Underlying Labor Litigation without contribution from Starr, and that Scottsdale has been unjustly enriched by denying coverage for C.C.C. and L&M. (*Id.* ¶¶ 67–82.)

On August 9, 2024, Scottsdale filed a letter motion for a pre-motion conference ("PMC") for its anticipated motion to dismiss, (Dkt. 10), to which Starr responded on August 16, 2024, (Dkt. 11). The Court denied the PMC request as unnecessary and set a briefing schedule for Scottsdale's motion to dismiss. (8/26/2024 Dkt. Order.) The motion to dismiss was fully briefed on December 30, 2024. (*See* Dkts. 16–17.) Scottsdale moves to dismiss this action without prejudice, or in the alternative, to stay this case until the conclusion of the State Court Action, asserting that this Court should abstain from exercising its jurisdiction under the DJA. (*See* Def.'s Br., Dkt. 16-1, at 1.)

6

## LEGAL STANDARD

"It is settled that '[e]ven in diversity actions, . . . federal law controls the justiciability of declaratory judgment actions.'" *LM Ins. Corp. v. Safety Nat'l Cas. Corp.*, 695 F. Supp. 3d 270, 299 (E.D.N.Y. 2023) (quoting *Stoncor Grp., Inc. v. Peerless Ins. Co.*, 322 F. Supp. 3d 505, 512 (S.D.N.Y. 2018)). Under the DJA, "[i]n a case of actual controversy within its jurisdiction," a federal district court "may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). "In other words, the DJA 'creates a means by which rights and obligations may be adjudicated in cases involving an actual controversy that has not reached the stage at which either party may seek a coercive remedy.'" *Admiral Ins. Co. v. Niagara Transformer Corp.*, 57 F.4th 85, 92 (2d Cir. 2023) (quoting *United States v. Doherty*, 786 F.2d 491, 498 (2d Cir. 1986)).

"The [DJA] confers on federal courts 'unique and substantial discretion in deciding whether to declare the rights of litigants.'" *Peconic Baykeeper, Inc. v. Suffolk Cnty.*, 600 F.3d 180, 187 (2d Cir. 2010) (quoting *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995)). Thus, even where a federal court has jurisdiction under the DJA, a court "may nevertheless decline to *exercise* such jurisdiction." *Admiral Ins. Co.*, 57 F.4th at 96. A federal court may dismiss or stay a declaratory judgment action under what is often referred to as *Wilton* or *Wilton*/*Brillhart* abstention doctrine. *See Stoncor Grp., Inc.*, 322 F. Supp. 3d at 514 (first citing *Wilton*, 515 U.S. 277, then citing *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491 (1942)); *Catlin Ins. Co. v. Champ Constr. Co.*, No. 24-CV-4499 (LJL), 2025 WL 2494291, at *8 (S.D.N.Y. Aug. 29, 2025) ("The doctrine of *Wilton* abstention clarifies that federal courts may, as a matter of discretion, dismiss or stay an action seeking a declaratory judgment in consideration of another proceeding in state court that addresses the same or similar issues.").

7

In 2023, the Second Circuit set forth several factors a court should consider when evaluating whether to abstain from hearing a claim for declaratory relief:

> (1) whether the declaratory judgment sought will serve a useful purpose in clarifying or settling the legal issues involved; (2) whether such a judgment would finalize the controversy and offer relief from uncertainty; (3) whether the proposed remedy is being used merely for procedural fencing or a race to res judicata; (4) whether the use of a declaratory judgment would increase friction between sovereign legal systems or improperly encroach on the domain of a state or foreign court; (5) whether there is a better or more effective remedy; and (6) whether concerns for judicial efficiency and judicial economy favor declining to exercise jurisdiction.

*Admiral Ins. Co.*, 57 F.4th at 99–100 (citation modified) (hereinafter, the "*Admiral* factors"). The *Admiral* factors are non-exhaustive and "no one factor is sufficient, by itself, to mandate that a district court exercise—or decline to exercise—its jurisdiction to issue a declaratory judgment." *Id.* at 100 (citing *Reifer v. Westport Ins. Corp.*, 751 F.3d 129, 146 (3d Cir. 2014)). "In federal actions, courts have refrained from exercising jurisdiction over a declaratory action when the issue would necessarily be determined through separate claims. Courts may compare the declaratory claim to separate claims made within the same lawsuit or a claim raised in a separate lawsuit." *Parts Auth., LLC v. Beyda*, No. 23-CV-7656 (NCM) (VMS), 2024 WL 3553447, at *4 (E.D.N.Y. July 26, 2024) (collecting cases).

## DISCUSSION

### I. Abstention is Appropriate in this Matter

The parties do not dispute that the Court *has* jurisdiction under the DJA; rather, they dispute whether the Court *should exercise* its jurisdiction.³ Scottsdale moves to dismiss this action on the

---

³ Indeed, this case presents a case or controversy ripe for adjudication considering the insurance coverage disputes arising from the Underlying Labor Litigation, even before that case settled. Pursuant to the DJA, "[c]ourts have found that 'declaratory judgment actions regarding the duty to indemnify may be ripe even if liability has not been finally established in the underlying action' because 'parties' adverse interests regarding indemnity may be "of sufficient immediacy

8

ground that the *Admiral* factors weigh in favor of *Wilton* abstention. (Def.'s Br., Dkt. 16-1, at 1.) The primary basis for Scottsdale's argument is that the underlying issue to be resolved—whether Scottsdale had an excess liability insurance policy in effect at the time of the accident—is currently being litigated in the pending State Court Action. (*Id.*) Starr opposes the motion, asserting, *inter alia*, that there are several differences between this case and the State Court Action. (Pl.'s Mem. Opp'n Mot. Dismiss ("Pl.'s Opp'n"), Dkt. 17, at 1–3.) Here, the Court finds that given the significant overlap between this case and the pending State Court Action, the *Admiral* factors weigh in favor of abstention.

The first and second *Admiral* factors ask "whether the declaratory judgment sought will serve a useful purpose in clarifying or settling the legal issues involved" and whether it would "finalize the controversy and offer relief from uncertainty." *Admiral Ins. Co.*, 57 F.4th at 99–100. Scottsdale argues that "there is no 'usefulness' to this litigation because it is wholly duplicative of the litigation already pending in state court." (Def.'s Br., Dkt. 16-1, at 7.) The Court agrees. In the State Court Action, though C.C.C. discontinued its claims, Scottsdale, its agents, and HCC— the primary insurer for Starr's insured, L&M—continue to litigate the very issue at the core of Starr's requested relief in this action: whether Scottsdale had an excess insurance coverage policy in effect at the time of the accident. (*Compare* HCC State Ct. Compl., Dkt. 16-11, ¶¶ 118–136; *with* Compl., Dkt. 1, ¶¶ 50–66.) The state court denied Scottsdale's pre-discovery motion for summary judgment, finding that there were potentially triable issues of fact as to whether Scottsdale owes coverage, (*see* State Ct. Summ. J. Order, Dkt. 16-13, at 4, 7), and Scottsdale's interlocutory appeal of that decision, arguing that Scottsdale is not obligated to provide coverage

---

and reality" to establish a live controversy even before it is certain that an insurer will be called upon to indemnify.'" *LM Ins. Corp.*, 695 F. Supp. 3d at 299 (quoting *Travelers Prop. Cas. Co. of Am. v. Harleysville Worcester Ins. Co.*, 685 F. Supp. 3d 187, 214 (S.D.N.Y. 2023)).

9

for the Underlying Labor Litigation under New York law, is still pending, (*see* Def.'s State App. Br., Dkt. 16-3); *Houston Cas. Co. v. Scottsdale Ins. Co.*, No. 2023-10306, (N.Y. App. Div.). Discovery has proceeded in the State Court Action regarding the extent of Scottsdale's insurance obligations that Plaintiff seeks to litigate here.

Because the underlying question of Scottsdale's coverage obligations is still unresolved in the State Court Action, the "risk of potentially contradictory fact finding between the state and federal court on this critical issue means that entertaining jurisdiction in this action would not 'clarify[] or settl[e] the legal issues involved[.]'" *Stoncor Grp., Inc.*, 322 F. Supp. 3d at 517 (quoting *Dow Jones & Co. v. Harrods Ltd.*, 346 F.3d 357, 359 (2d Cir. 2003)). Rather, exercising jurisdiction at this time would "only further confuse them as this Court and the state court may come to differing conclusions" as to whether Scottsdale had an insurance policy in effect on the date of the accident. *Id.* (citing *Lafarge Canada Inc. v. Am. Home Assurance Co.*, No. 15-CV-8957 (RA), 2018 WL 1634135, at *9 (S.D.N.Y. Mar. 31, 2018) (noting that "where risk of contradictory fact-finding existed, '[r]uling prematurely . . . would add confusion, not clarity'")).

Starr attempts to distinguish the State Court Action from this action, arguing that it is not a party to the State Court Action, that "[n]either L&M nor anyone else has brought any cause of action on behalf of Starr in any state court proceeding," and that "Starr's rights and theories of prosecution will not be addressed in the pending state court appeal." (Pl.'s Opp'n, Dkt. 17, at 12.) Though Starr is not a party to the State Court Action, "there is no requirement under *Wilton* abstention that each party to the federal case also be a party to the state case." *Catlin Ins. Co. v. Champ Constr. Co.*, No. 24-CV-4499 (LJL), 2025 WL 2494291, at *10 (S.D.N.Y. Aug. 29, 2025). The relevant inquiry here is whether there is significant overlap between the factual and legal issues and whether those issues "can be better settled in the proceeding pending in the state court,"

10

regardless of whether the State Court Action is a true "parallel proceeding." *Id.* (quoting *Stoncor Grp., Inc.*, 322 F. Supp. 3d at 514, and collecting cases). Starr's interests are surely aligned with those of HCC—the primary insurer for Starr's insured—which remains a party to the State Court Action. To the extent Starr argues that it would present different legal theories not presented by HCC in the State Court Action or at issue in Scottsdale's pending appeal, the Court does not find this sufficiently distinguishes the State Court Action from this case. There remain several outstanding motions in the State Court Action that could significantly impact Scottsdale's rights and obligations on the very question underpinning Starr's federal Complaint. Accordingly, exercising jurisdiction under the DJA at this time would not necessarily "serve a useful purpose," "finalize the controversy," or "offer relief from uncertainty." *Admiral Ins. Co.*, 57 F.4th at 99–100.

For many of the same reasons, the remaining *Admiral* factors weigh in favor of abstention. The overlap in factual and legal issues between the State Court Action and this case indicate that this action may be an attempt at "procedural fencing or a race to res judicata," and that exercising jurisdiction would "improperly encroach on the domain" of the state court, *Admiral* factors three and four. *Id.* at 100; *see Parts Auth., LLC*, 2024 WL 3553447, at *5. Scottsdale's coverage obligations turn on issues of New York state law that have been pending before New York courts for several years, including at the appellate level, and thus it would not be appropriate for this Court to step in at this stage. *See TIG Ins. Co. v. Fairchild Corp.*, No. 07-CV-8250 (JGK), 2008 WL 2198087, at *4 (S.D.N.Y. May 27, 2008) ("Abstention under *Wilton* is particularly appropriate where the suit only presents issues of state, but not federal, law." (citation omitted)); *Farmers Prop. & Cas. Ins. Co. v. Fallon*, No. 21-CV-6022 (GRB) (ARL), 2023 WL 4975977, at *4 (E.D.N.Y. Aug. 3, 2023) ("[T]hat this action seeks to compel this Court to encroach on matters

11

that are indisputably more familiar to the state judge handling the underlying litigation seems inappropriate."). Because these issues can still be decided by the state court, resolution there would be the "more effective remedy," *Admiral* factor five. *Admiral Ins. Co.*, 57 F.4th at 100. Similarly, avoiding piecemeal rulings promotes judicial efficiency and economy, *Admiral* factor six, and "[a]ll else being equal, reducing the number of court proceedings involved with any given issue entails a more efficient use of judicial resources." *TIG Ins. Co.*, 2008 WL 2198087, at *4.

The Court recognizes that there is a possibility that the State Court Action might not reach the underlying merits of the factual and legal questions at issue here. Recently, Scottsdale moved again for summary judgment on HCC's claims in the State Court Action in part on statute of limitations grounds. *See* Def.'s Mot. Summ. J., *C.C.C. Renovation Inc. v. Scottish Am. Ins. Gen. Agency., Inc.*, No. 703374/2022 (N.Y. Sup. Ct. July 30, 2025), Dkt. 222. Additionally, if the state court ultimately finds that Scottsdale did have an excess liability coverage policy in place at the time of the accident, there may still be an issue related to priority of coverage between Starr and Scottsdale. Still, the better course of action at this time is to abstain from exercising jurisdiction under the DJA while several motions on both procedural and substantive aspects of this case, including Scottsdale's interlocutory appeal, are pending in state court.

## II.    Stay Versus Dismissal

As the Supreme Court noted in *Wilton*, "where the basis for declining to proceed is the pendency of a state proceeding, a stay will often be the preferable course, because it assures that the federal action can proceed without risk of a time bar if the state case, for any reason, fails to resolve the matter in controversy." 515 U.S. at 288 n.2 (citation omitted). There are legal and factual issues implicated in this case that might not be resolved through the State Court Action, such as Starr's claims relating to priority of coverage and unjust enrichment, as alleged in Counts

12

III and IV of Starr's Complaint here. (Compl., Dkt. 1, ¶¶ 67–82.) Given that dismissing this case now creates the risk that at the point Plaintiff might seek to reopen it, the applicable statute of limitations will have run, the Court chooses to stay, rather than dismiss, this action pending the resolution of the State Court Action.

## CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss is denied, but its request for a stay, in the alternative, is granted. This matter is stayed pending resolution of the State Court Action. Accordingly, Plaintiff shall file a report on the status of that action by March 30, 2026.

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: September 30, 2025
       Brooklyn, New York

13